We have one case this morning in Re Queen's University at Kingston involving a petition for a writ of mandamus and we'll hear first from Mr. Crosby. It's Mr. Blackburn, Mr. Crosby's. Oh sorry. That's okay. May it please the clerk. I'm Sean Blackburn. I represent Queen's University at Kingston and Partek Research and Development Innovations. The petitioner has asked this court for a writ of mandamus directing the District Court for the Eastern District of Texas to withdraw its order compelling production of documents which reflect communications between Queen's University's employees and the registered patent agents. What's your response to the argument that even if this is a privilege that we should acknowledge that mandamus is not appropriate in this case because of the stay in light of the re-exam. Sure. Well one, the stay was not simply in light of the re-exam. In fact, SAMHSA did not move for a stay in view of the IPR. They moved for a stay in view of the mandamus petition. The court granted it on both grounds. I would argue that he more relied on the mandamus petition. He actually found that some of the IPR because they delayed. Granted it is stayed though in view of the IPR and the mandamus petition. It will not come unstayed until both have been decided. So if we play this out hypothetically, if this court was to say mandamus is not appropriate, well that's one of the triggering events, right? Because you issued an opinion saying mandamus is not appropriate. Then if and when we come out of IPR, that would be the second triggering event. At that stage, we will have to produce the documents. No doubt, right? The case will go on and we will not have another chance to mandamus. I seriously doubt Judge Payne will stay the production of these documents again for us to kind of enter a Groundhog's Day scenario and re-mandamus his order. Moreover, we are currently under a court order that once this mandamus decision has come down, seven days after that, we are to produce these documents. So it wouldn't be affected by the other stay? It's not clear to me, Your Honor. That's the question. We would, once it, say this court was to deny a mandamus petition, we would need to seek guidance from the district court as to whether or not he would want us to produce those or not. It's simply not clear to me. If we are required to produce those, Sampson could in fact use those documents. One, they're obviously they would have access to them. And two, they could seek to use them in the IPR. They could seek leave of the court. They could seek and leave of the board to use those documents, just as Queens has done with Sampson's documents in this case. Okay. What makes this, your request, extraordinary? I mean, we view writs of mandamus as requiring or being based on extraordinary relief, special circumstances. And patent agents have been allowed to practice before the PTO almost from its very inception. Right. And it seems to me there's not a lot of cases on this particular issue simply because it's not a big issue. Why should we even entertain this under as a writ of mandamus issue? Well, I would disagree that it's not a big issue. There are about 12 or 13 opinions and most of those have been written over the course of about 50 years. These are discovery orders. Just as the court in this case did not issue a written opinion, most of the time in discovery disputes, there are no written opinions. I can tell you that personally, this issue has arisen twice for me this year. Is that because we usually treat rulings pertaining to discovery as part of the entire appeal, which there should be on a final judgment issue? Well, no. I mean, obviously generally we do. But my point is that if you're saying this issue doesn't come up that often, I'm saying I don't agree that that is true in the district courts. There are about 12 or 13 opinions. But the reality is that's the tip of the iceberg because discovery opinions usually don't get written. Right. When a party moves to compel, the judge usually will say either an oral argument, which way he's leaning, or we'll just simply rule from the bench. And then we'll issue an order. The order will be two or three sentences. Getting an actual opinion on a discovery issue is fairly rare in my experience. And as I said, I've had this issue arise twice. Also, the reason why I believe it's extraordinary is for the same reason that MSTG was, the same reason that Henry Spaulding was. Henry Spaulding dealt with an invention disclosure record. It's kind of the same kind of things that are going on here. These are communications that are made for the purpose of patent prosecution. Right. And they come up because parties want to compel the production of those documents. And just as with respect to that and the settlement privilege in MSTG, there's really no other way for this kind of legal issue to be resolved. I mean, generally speaking, it's unlikely that on a direct appeal that we'll be able to raise this issue. Patent cases generally involve three issues, infringement, invalidity, and damages. They're heavy with expert opinion. It's unlikely that we'll be able to show reversible error to show that the mere compulsion of these documents has so tainted the case that this courts should reverse on appeal. Are you asking us to create a new privilege for patent agents? Are you asking us to say that the umbrella of the attorney-client privilege covers these communications? I think it can be conceptualized either way. And I don't want to get into semantics. Is that what law is all about? Well, maybe and maybe not. With respect to the justification for the privilege, I think it extends both to attorneys and agents. With respect to prosecution, they do the exact same things. They're authorized to do the exact same things. They have the same clients seeking the same advice. Some courts have treated it as a standalone privilege. Others have said it's the attorney-client privilege that extends to patent agents. I think the opinion could be written either way and be fully justified. Rule 501 certainly allows the recognition of new privileges. But even if it is written and considered a new privilege. Would you say that it's an analogous privilege? I would say it's an analogous privilege. I absolutely would. For all the reasons that attorney-client privilege apply to patent prosecution, they should apply with a patent agent. Whether that means that the attorney-client privilege extends to cover agents or it is a separate Rule 501 privilege, either way would be fine with us. But if we were to call it a separate privilege, then we run smack up against the strict presumption against the creation of new privileges, don't we? Yeah, that is true. Although I think it can still be reason, you know, Rule 501 says reason and experience justify the creation of new privilege. I think reason certainly works here. Well, what about experience? There hasn't been this privilege for all these years and everything seems to have been working fine. Well, I'm not sure that that's entirely true. In re-ampicillin is a 1978 case. Vernitron is 1975. Sperry only came down in 63. So, in some sense, this privilege has existed for 40 years, depending on the district court in which you are in. The cases are fairly evenly split. I think there's a slight majority in favor of not recognizing the privilege. But the reality is they're operating in a gray area, which is why I think, you know, the guidance on this issue is needed. Do you understand, do you know that the PTO is looking into this? I do know that the PTO is looking into this. Although, if you looked at the PTOs, they issued kind of a call for papers. And what they asked, if you read what they say on their website, it says, should the courts recognize this privilege? They didn't ask, should Congress institute new privilege? Should the PTO declare by fiat that there is new privilege? They were asking whether or not the courts should recognize this privilege. That's what it says. Is there anything that the PTO could do by regulation in order to institute an analogous type privilege? Well, it's interesting because it appears as though under the previous professional rules that they may have. If you look in the, so the rules that were in effect from 99 to 2013, the sections, the regulations have changed I think three or four times over the past 40 years. And they changed the last time in 2013. The rules that were in effect from 99 to 2013, in their advance notice of rulemaking, they said that in certain situations, communications with patent agents are considered privilege. They cited ampicillin for that proposition. If you look at 37 CFR 10.57, which is the prior regulation on governing confidentiality, it expressly defines confidence as information covered by the attorney client and agent-client privilege. So to that extent, I think they have expressed that view. Do they have that kind of substantive rulemaking authority to create a privilege? I think with respect to practice before them, they do. Could they bind the courts? I'm not so sure. They can tell agents that agents have to maintain confidence. They absolutely can. And they absolutely can say that they have to maintain it as privilege, which would put agents in a very strange position. And they have, right? But they can't bind the courts? I suspect not. But I think they should still be, you know, even if they're entitled to Chevron deference on that point, I think, you know, uniformity and Skidmore deference are certainly appropriate. Isn't that the issue that we should be reviewing, whether the PTO has the authority to extend a privilege or whether it has the authority to implement by regulation something analogous to the privilege? No, I don't think so because I don't think that privilege could bind this court. If the PTO was to actually say, you know, there's a privilege. Courts should respect this. I don't think that they could do that. And we're not reviewing a PTO action. What? I'm sorry? We're not reviewing a PTO action. Exactly. So they couldn't, you know, they couldn't issue a regulation, I think, with respect to that kind of collateral type of effect. But certainly the PTO has the authority to regulate the practice of patent agents and to require them to keep these communications privileged, and they did. If we were to recognize a privilege, how far could it extend? I think it would be coextensive with the attorney client privilege with respect to patent prosecution matters before the United States Patent Office. Okay, so if a patent agent were to, for instance, give a validity opinion with respect to a third party's patent, that wouldn't be covered by this privilege, would it? I would agree, such as the kind that comes up in the case of willfulness. That's right, and frankly, I think something like that with respect to third party's patents is probably not sanctioned by Sperry either, right? Sperry does talk about patentability opinions, but that's the kind of opinion that a prosecutor has to give to his client prior to filing a patent application. So it's not an issue just simply extending the existing privilege. We would have to draft an entire new privileged, tailored, custom-made just for patent agents. No, I do not believe so. There actually are pre-existing rules. There are only a couple cases from this court, such as Spaulding, that deal with what kind of communications between a patent prosecutor, writ large attorney or agent, are covered by the attorney client privilege. District courts have developed doctrines on that. Certain things, they've stated things that are mere conduits of the patent office are not privileged. I think it would be coextensive with patent prosecution practice, and it would be the same with respect to an agent or attorney. I don't think it's really different. So it would be essentially coextensive with Sperry, with the description of the activities that Sperry recognized as the practice of law sanctioned by the federal government. Exactly, Your Honor. And I've noticed I'm well into my rebuttal time at this point. If there are no questions, I'd like to reserve the rest of my time. We will do that, Mr. Blackburn. May it please the Court. Matthew Wolfe, Arnold and Porter, on behalf of Samsung. Cheney identified three factors that this panel should consider when deciding whether mandamus should issue. And I'd like to invert the order of those considerations in light of some of Your Honor's questions so far this morning. The final consideration is whether it's appropriate under the circumstances. Your Honor, you asked about whether or not this could be considered after a full appeal, and the answer was, and I try to write it down as best I can, it's unlikely to show reversible error. Well, I would suggest that a mandamus petition that's unlikely to involve reversible error is not a mandamus petition at all. Can't involve clear abuse of discretion or usurpation of power. It's just not that big a deal in this case. Second factor, as Your Honor raised, the case stayed below. The comments counsel made I respectfully disagree with. His Honor stayed the case in its entirety pending the later of the two events. If this Court were to, as we believe it should, say that mandamus should not issue and we go on to the IPR, all orders would be stayed, including the order to compel the production. We would not get the documents unless and until. We don't have the stay order in our record. Do you agree with the characterization that essentially the lower court said that the pendency of the mandamus was really the primary grounds for the stay? No, Your Honor. There was two reasons. It was the IPR and the mandamus. The court expressed frustration that counsel for Queens was not producing the documents. There was clearly that sentiment, but there was no suggestion that there's a primary and a secondary reason for the stay. There were two reasons for the stay, and the evidence of that is the fact that the lifting of the stay is triggered by both events have to be done with. So if it was the mandamus petition that was the dog and the IPR that was the tail, presumably the court would have said, I'll lift the stay if and when mandamus is resolved, regardless of what happens in the patent office with the IPR. So the evidence, the order itself suggests that they were equally important to the court. Do you agree that it's unclear whether or not upon issuance of any order from this court that that would trigger the obligations? No, I think it is abundantly clear that whatever this court does, that the production of documents will not occur unless and until the IPR is done and claims come back. This case is stay. There will be no production pursuant to this case or pursuant to orders in this case unless and until the claims survive IPR. Well, why shouldn't we, even if this isn't a perfect vehicle for mandamus, why shouldn't we say that this is an important enough issue that will rarely come before us and there's an obvious split among the district courts that needs to be resolved so that we should answer the question regardless of that final prong? Understood. So let me add one more to the final prong and then explain, respond to your answer in light of the first two prongs. And Your Honor already raised it, and that is that there is consideration, there is active discussion in the intellectual property community about whether through regulation or going through Congress, a national and indeed international homogenization, for lack of a better term, should be ruled. And to have this court in parallel, particularly on a mandamus petition, without the normal weighing in of amici that would happen if something was truly important, without the normal appeal, that essentially this court should jump in front of that line. Absent an appropriate vehicle, I would suggest that that's not the right circumstance. We're not jumping. We wouldn't be jumping in front of a line. We would be deciding a case before us. Your Honor, what Rule 501 and what Jaffe suggests 501 should be found is that a new privilege, and let's be clear, this would be a new privilege. Trammell and Jaffe both make clear that the attorney-client privilege is based on the status of the individual, not the substance of the communication. So you can't argue a privilege by analogy. That doesn't work under the Supreme Court doctrine that binds this court. But a patent agent operating within the scope of his authority, according to Patent Office rules under Sperry, why wouldn't the patent agent be covered? First, Your Honor, to be clear, Sperry unambiguously does not discuss attorney-client privilege. The analogy they're trying to draw are to suggest that all Sperry was talking about was the unauthorized practice of law. And in fact, there are courts that have rejected the notion that Sperry is broader than that. But Sperry did begin with the proposition that what patent agents are doing before the PTO is the practice of law. Yes, Your Honor, there's no doubt about that. The pronunciation escapes me, but Rivastagane, I believe it was, called it a subspecies or a subgenre of law, which, by the way, is another reason why we should let Congress do this job, at least not on a mandamus petition. And this is an issue that was only lightly touched upon in opening remarks, is that a patent agent, in this case, in fact, has given advice on issues of infringement. And we can see that on Appendix A90 and A96. On issues of monetization, we can see that on A157. On issue of damages, we can see that on A159. But those, even under the proposal from your friend on the other side, those wouldn't be that they're asking be created. Agreed, Your Honor. But think of the, just on a purely practical level, the morass that this would create. If there was just a general saying that the patent office has defined the scope of the privilege by defining the scope of the activity. Well, then what is the district court supposed to do with a 2,000-entry privilege law? Is it supposed to go entry by entry and see whether intermixed in the purportedly prosecution documents? Are discussions of infringement? Are discussions of validity of third-party patents, as Your Honor raised? Are discussions of damages? Well, presumably, if the privilege was defined and delimited, then the obligation would be on the party asserting the privilege to only put on that log the things that are privileged, which would greatly narrow what the district court had to look at or had to examine in camera. Hypothetically, Your Honor, but here we have, notwithstanding their argument that they're seeking a very narrow patent agent privilege, 2,000 entries, 1,800 of which on their face would seem to be beyond the scope of the patent agent privilege they're seeking in this case. So again, why this is not an ideal vehicle, to say the least, for an analysis of an issue like this. To get into the fundamental point, why shouldn't this be done? Jaffe suggested that the most important policy consideration is the search for the truth. That is the presumption. That is the predominant consideration. If a patent agent privilege is put in place, to the extent it's important at all, and Your Honor, you raise an interesting question. Just how important is this? I mean, it hasn't come up before in the ordinary course. Patent agents seem to be doing their business just fine for the last 50 years. It's not clear. But we don't decide issues on the basis of how often they have come up or not come up in the past. We deal with issues as they come up before us. Your Honor, you do in the ordinary course. But on mandamus, it does matter how important it is. In deciding whether a mandamus petition should issue, the import, the severity, the usurpative, is that how you pronounce that word from Trammell? The usurpative nature of what the district court does comes into play. I've never used it before today, Your Honor. That comes into play. So you're absolutely right, Your Honor. If this had come up through the ordinary course, through an ordinary appeal, with the full record to see is this important, is it not, where if amici wanted to weigh in, they could, because this obviously affects the patent community potentially, all of that would make sense. But when talking about mandamus, that's a very different question. And then it does matter, Judge Reina's question is precisely on point, is this such a big deal? But assuming it is a big deal, if, for example, a patent agent discusses with the inventor 10 years ago, 12 years ago, at the time of invention, a potential on-sale bar activity or a public use activity, and the patent agent decides, well, I don't think it was on-sale bar, so we don't need to disclose it. Well, if we never find out about that, we as the defendants in this case have no way to test whether it was an on-sale bar. How would that be different if it was an attorney? Well, Your Honor, we've decided for time immemorial that attorneys were willing to sacrifice some truth finding for the attorney-client privilege. But what Jaffe tells us is every time we want to find a new privilege, we have to ask the question, is the desire to find the truth outweighed by an important fundamental public good? So we can't say, we can't argue by analogy. Jaffe tells us that's not the right analysis to take. We have to say, in this instance, forget what already exists. We might decide that attorney-client privilege, you know, if we were sitting around having a cup of coffee, that attorney-client privilege should be tailed back in light of what we know. But that's water under the bridge. For each new privilege, we have to ask the question anew, does the loss of the truth, is that outweighed or does it outweigh the benefits? And Your Honor asked a critical question, which is, what are the particular benefits here in this case of the patent agent privilege? And in Lawson, the court denied mandamus because there were no particularized explanations of what the harm was. And here, just as in Lawson, there is no particularized explanation of what the harm is. Do you see any alternative forms of relief for the petitioner? At the end of the day, of course, if these documents are produced, and if they are relevant to issues in this case, and if the judge considers them or sends them to the jury, and this court ultimately decides that there should be a privilege and those documents shouldn't have been sent, considered to the judge for whatever purpose, Markman, well Markman's already done, but summary judgment, or if it goes to the jury and the jury decides something based on what the patent agent said, then the court can say there was a risk of error. If we find there's no privilege under these circumstances, and the patent agent has to cut up these documents, isn't he then in violation of the PTO rules, and wouldn't we be putting that person in a conflict situation? Absolutely not, Your Honor. Section 106, the very last line of for other purposes or other circumstances. So the confidentiality rule specifically says... Did that say other purposes, or did that say duty of disclosure? It's the confidentiality provision. I believe it's 106. I'm speaking off the top of my head, Your Honor, but I believe it's the very last line of .106. That the patent agent would be protected by it. Exactly. Absolutely. It's specifically called out as... In each instance, there would have to be a court order to disclose. And that's the way we are, depending on which jurisdiction you're in, that's the place we are. And again, let's not forget the context we're in, and I know I'm beating a long dead horse here, but we're up here on mandamus, and whether or not we believe intellectually that someday there should be a patent agent's privilege, and that that should be defined in certain ways with bounds, the question is, under Jaffe, specifically, and under Mohawk more generally, is this the case that deserves mandamus? Are there other adequate means? Or is this being used as a substitute for appeals process? We have yet not heard a single specific example of how queens will be heard if these documents are produced, and then at the end of the day, they shouldn't have been. I mean, odds are we've read file histories. The odds are the vast majority of the documents that are on this privilege log are irrelevant. But the two or three or four that might be important, well, maybe they're important because they get it at the truth, or maybe they're prejudicial. But we're telling the district court, we're not going to trust you to weed out what's prejudicial and shouldn't be in front of the jury. For example, if the patent agent says, I don't think the claim should be read that broadly, and the judge says quite rightly, well, if he's not one of skill in the art, that's not relevant to the analysis anyway, versus something that may be probative, like the hypothetical I gave you before. There's an on-sale bar activity that we don't know about sitting here today that we'd learn about if we got these documents. But the district judge is perfectly... Remember, we're not done when the district court orders production. Then we have to prove that they're relevant, and that relevance outweighs the prejudice before we can use them in any way. So that's another buffer against the risk that they're concerned about. Again, the risk not being specified here at all. And then the next step is if the judge makes a mistake and lets something in that this court ultimately says was prejudicial, well, then at the end of the appeals process, this court can say, sorry, you have to do it again. That's the factor. The third factor... That would be about the last thing the district court would want, right? Which would tend to motivate them to keep the documents, if it was a closed call, would tend to motivate the court to not allow us to use it in front of for the court's purposes, the jury purposes. I want to get to the final standard in my last minute, if it's okay. In order for mandamus to issue, there has to be a clear and indisputable right of relief. Jaffe says there are three things you look at when deciding whether there's clear and indisputable rights. First, what have the states and lower courts done? Here, the states have done nothing as a matter of legislature. There's nothing. And as for the cases, we counted 27 cases, 18 of which said no patent agent privilege. How would the states even have the occasion to care? Well, if you look at the commentators, Your Honor, in the PTO discussion, this comes up a lot in malpractice cases, for example. This comes up in product liability cases. Those have been judged in Professor Frost's statements to the Patent Office, for example. He discusses those. So the states have addressed privilege issues routinely, but not this one. And more importantly, as I said, the district courts, 18 of 27 have said no patent agent privilege. So there's no consensus. How can it come up in malpractice cases when the the client, if there's a malpractice, that the lawyer can't claim the privilege? Well, I have to think this through. I'm just citing what the professor said in his brief. But I presume it would come up because the lawyer would want to show what they had done. The patent agent would want to say, this is the discussions we had to defend myself. And the client would say, that's attorney-client privilege. But once they sue the lawyer, they've waived the balance. That's true. So maybe the professor was wrong in that instance. But Congress, the second issue is Congress has not said anything on the topic. And the third factor Jaffee cites is the Judicial Conference Advisory Committee, which has not said anything on the topic. So far from there being a consensus of the world out there that there should be a patent agent privilege, the few that have spoken on have said two to one, there should not be. Thank you, Mr. Wolf. Thank you, Your Honor, for your time. Mr. Blackburn has a little rebuttal time, two and a half minutes. Thank you, Your Honor. Can you start with one of the major points that was made on the other side, which is that you have not really articulated the harm that you would suffer? The harm, I will put it this way. It is very difficult to articulate the exact harm without waiving the privilege, without telling you exactly what is in the documents. I can't tell you exactly how Samsung would, but rest assured, rest assured they would use it. Isn't the harm the discouragement of free and open communication, which is the purpose of the patent? That is the harm for all people who seek to use patent agents, just as they seek to use patent attorneys. But in this case, our harm would be that they would be able to use these documents against us. Even post-judgment, we get a reversal on appeal. But that's assuming we lose, right? That is assuming we lose, but that's true in all these cases. At this point, you don't know if you're going to lose or not. That's true, and that was true. And if documents are produced, then the court still has to make some sort of admissibility ruling on it. Absolutely true, Your Honor. That's another point. You don't know how you're going to come out at that point either. Absolutely true, and that was just as true in MSTG, in which this court conducted mandamus review. It was just as true in Enri Spalding, in which there was mandamus review, and in Enri Regents of California, in which there was mandamus review. Those are all privilege issues, all of which were uncertain, right? You didn't know that the settlement agreements at MSTG would make it into the expert report, that they would be admissible at trial, that they would be relevant to reasonable royalty. But this court did conduct a mandamus review, because the factors that were This is four corners on it. Samsung has not argued otherwise. In the minute that I have, I would like to address the court's stay order in this case. First, how do you justify the breadth of the claim of privilege here? Okay, they're using the subject lines from the emails that are on the privilege law. They're not using the descriptions of what they are, what is actually contained in those emails. I, unlike Mr. Wolf, have looked at these documents, and I believe that they are privileged. I don't believe that they extend beyond the patent age of privilege. At any rate, I don't justify, I don't need to justify the breadth, because the district court did not rule on that. They did not raise it. They did not meet and confer on it. They have long since waived it. And we made that point in front of the district court in our SIR reply, and he, in turn, did not rule on it, because it was waived, not raised, not met and conferred on. Well, I'm not sure how it was waived, if their argument is there is no privilege, period, regardless. They don't really have to make the argument of the subset is, assuming I lose that point, let's say the privilege has to be narrow. Well, I'm not saying the privilege has to be narrow. I'm talking about, I thought we were talking about the specific entries on the log, because we agree that the privilege should be narrow. I think that if the privilege exists, both parties are in full agreement that it's only with respect to patent prosecution before the USPTO, just as was laid out in Sperry, if it exists. But it certainly wouldn't cover infringement opinions or damages. I agree. I 100% agree. I disagree that those communications that are on the privilege log actually pertain to that. Some of the subject lines say all kinds of things that have nothing to do with patent prosecution at all, but the content of those communications between Mr. Shribner and the employees does. And that's why we think that it definitely covers those. But at any rate, I don't believe that question supports that. If those communications are relevant material to, let's say, the prosecution, what effect does a duty of candor have on having to disclose those anyway? And by duty of candor, do you mean duty of candor to the USPTO? Yes. I think, again, if you're talking about claim scope, let me give you a hypothetical. It comes from my practice as a patent agent before I became an attorney. Oftentimes, clients will come to you and they think they've invented the world. They haven't. They have invented something, but they haven't invented the world. And you have to have very frank conversations with these clients about what exactly it is that they've invented, what their claims should cover. And the whole point with respect to a patent attorney, and this is why privilege covers patent attorneys practicing before the PTO, is that they should be able to have those conversations without them being used against them later. And we simply submitted that same privilege should cover patent agents. What about a conversation where the lawyer says, I'm 100% convinced that this prior art is relevant, is applicable, and the client says, no, you're not to use it, and you're not to say anything about this. Is there a duty of candor there? I think there probably is. In fact, I'm sure that there is. You may have to, I apologize, I'm not super familiar with the disciplinary rules, but I would suspect that you would have to disclose or withdraw the same way an attorney would. Also, there's definitely a duty of candor. There's inequitable conduct. There's a potential waiver of privilege with respect to a crime fraud exception. We're certainly not arguing that agents or attorneys should be able to commit fraud on the patent office. Thank you, Mr. Blackburn. It's been a privilege to hear two good arguments. We'll take the case under advisement. Thank you.